# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

VICENTE GABRIEL GARZO; GABRIEL ANDRES GARZO; and LATITUDE 33 INVESTMENTS, LLC,

Petitioners,

v.

ANA LUISA ONTIVEROS LOPEZ, aka ANA LUISA NEVAREZ, aka ANA NEVAREZ, aka ANA LUISA ONTIVEROS DE NEVAREZ; FRANCISCO JAVIER ONTIVEROS LOPEZ; MARGARITA ONTIVEROS LOPEZ; MARIA ANGELICA ONTIVEROS LOPEZ; MARIA ELENA ONTIVEROS LOPEZ; THE ESTATE OF MARTHA JESUS ONTIVEROS LOPEZ; THE ESTATE OF PANTALEON ONTIVEROS MENDEZ; THE ESTATE OF VICTORIA LOPEZ CRUZ, aka VICTORIA LOPEZ CRUZ, aka VICTORIA LOPEZ DE ONTIVEROS; and DEL PADRE LAND TRUST LLC,

Respondents.

Case No.: 3:25-cv-03053-H-JLB

**ORDER:**

**(1) GRANTING PETITIONERS' MOTION TO CONFIRM FOREIGN ARBITRAL AWARD;**

**(2) DENYING RESPONDENT'S MOTION TO DISMISS; AND**

**(3) DENYING RESPONDENT'S APPLICATION FOR LEAVE TO CONDUCT DISCOVERY**

[Doc. Nos. 3; 15; 24]

/ / /

/ / /

On November 7, 2025, Petitioners Vicente Gabriel Garzo, Gabriel Andres Garzo, and Latitude 33 Investments LLC (collectively, "Petitioners") initiated this action by filing a petition to confirm convention arbitral awards against Respondents Ana Luisa Ontiveros Lopez, Francisco Javier Ontiveros Lopez, Margarita Ontiveros Lopez, Maria Angelica Ontiveros Lopez, Maria Elena Ontiveros Lopez, the Estate of Martha Jesus Ontiveros Lopez, the Estate of Pantaleon Ontiveros Mendez, the Estate of Victoria Lopez Cruz Widow of Ontiveros, and Del Padre Land Trust LLC (collectively, "Respondents"). (Doc. No. 1.) On January 23, 2026, Petitioners filed an amended petition. (Doc. No. 2.) On January 29, 2026, Petitioners filed a motion in support of the amended petition. (Doc. No. 3.) On May 22, 2026, after Respondent Ana Luisa Ontiveros Lopez ("Respondent") secured counsel in the United States, Respondent filed a motion to dismiss the amended petition or, in the alternative, to continue the hearing to conduct discovery. (Doc. No. 15.) On June 22, 2026, Petitioners filed an opposition to Respondent's motion. (Doc. No. 18.) On July 24, 2026, Respondent filed a reply in support of her motion to dismiss. (Doc. No. 20.)[1] On August 3, 2026, Petitioners filed a reply in support of their motion to confirm. (Doc. No. 21.) On September 16, 2026, Respondent filed an application for leave to conduct limited discovery relevant to Article V defenses and to continue the hearing on Petitioners' motion to confirm. (Doc. No. 24.) On September 18, 2026, Petitioners filed an opposition to Respondent's application. (Doc. No. 26.)

On October 26, 2026, the Court held an in-person hearing on Petitioners' motion to confirm, Respondent's motion to dismiss, and Respondent's application for leave to conduct discovery. Attorney Sean M. Sullivan appeared as counsel for Petitioners. Attorney Jose A. Contreras appeared as counsel for Respondent. For the reasons below, the Court grants Petitioners' motion to confirm as to the Final Award dated June 12, 2023, denies Respondent's motion to dismiss, and denies Respondent's application for leave to

---

[1] Respondent titled the document "Respondent's Brief in Opposition to Petition to Confirm Award and Reply in Support of Motion to Dismiss." (Doc. No. 20.)

conduct discovery.

**Background**

On January 10, 2014, members of the Garzo and Ontiveros families entered into a joint-venture contract governing the ownership and development of real property owned by the Ontiveros family in Baja California, Mexico (the "Ontiveros-Garzo Agreement"). (Doc. No. 2, ¶ 16.) The Ontiveros-Garzo Agreement contemplated that the families would undergo a joint real estate development project and divide the subsequent profits. (Doc. No. 2-2.) Through the agreement, the Ontiveros family retained ownership of the property but agreed to contribute usufruct rights to the partnership. (Id. at 5.) Under Mexican law, a usufruct is not an ownership right but is a temporary right to the use and profits of a property. (Doc. No. 2-6 ("Partial Final Award"), ¶ 90.) The Ontiveros-Garzo Agreement contains an arbitration clause requiring disputes to be resolved by arbitration under the American Arbitration Association ("AAA") Rules and Procedures with the seat in San Diego, California. (Doc. No. 2-2, 15.) The Ontiveros-Garzo Agreement, including its arbitration clause, was later incorporated by reference into the December 19, 2015 Operating Agreement of United Land Holdings, LLC ("ULH"), the parties' joint entity (the "Operating Agreement"). (Doc. No. 2, ¶ 20.)

Following the Ontiveros family's alleged failure to comply with their contractual obligations, Petitioners initiated arbitration proceedings against Respondents. (Doc. No. 2, ¶ 22.) In accordance with the parties' agreement, the arbitration proceeded before a three-member Tribunal in San Diego, California. (Partial Final Award, 1; Doc. No. 2-8 ("Final Award"), 1.) The Tribunal found that Respondents were duly notified of the arbitration, including through a Notice of Arbitration served on Respondent and through multiple ICDR notices. (Partial Final Award, ¶¶ 52-58, Ex. C; Final Award, ¶¶ 73-75.) But Respondents largely failed to participate and did not attend, despite submitting several documents during the arbitration proceedings. (Partial Final Award, ¶¶ 56, 66; Final Award, ¶¶ 83, 86.)

The arbitration took place in two phases. The first phase culminated in a 49-page

Partial Final Award dated February 23, 2021. The Partial Final Award resolved certain issues relating to liability, including the validity of the parties' agreements and their rights and obligations owed, but it also recognized that certain additional claims were reserved for a subsequent stage of arbitration. (Partial Final Award, ¶¶ 63-64.) The Tribunal declared the Ontiveros-Garzo Agreement and Operating Agreement to be valid and enforceable, found that Respondents owed fiduciary and good-faith duties, and ordered Respondents to comply with certain ongoing obligations. (Id. at ¶ 116.) Respondents were ordered, among other things, to execute the usufruct within 30 days and provide Petitioners with various accounting reports and financial information on a recurring basis. (Id.)

After Respondents failed to comply with the Partial Final Award, the Tribunal proceeded to the second phase of arbitration and issued its Final Award on June 12, 2023. (Doc. No. 18, 4.) The Final Award entered compensatory damages of $45,164,953 to Petitioners, awarded $1,691,273.33 in arbitration costs and expenses, ordered interest at 10% per annum on all unpaid sums beginning 31 days after notice of the Final Award,[2] and reaffirmed Respondents' obligations under the Partial Final Award, including to execute and record the usufruct, until full payment. (Id.; see also Final Award, ¶ 210.)

Respondents did not move to vacate, modify, or correct either award within the requisite three-month period. See 9 U.S.C. § 12. Nor is this Court aware that either award has been vacated, set aside, or suspended by any competent authority.

By the present motions, Petitioners request that the Court confirm the Partial Final Award and the Final Award pursuant to the Inter-American Convention on International Commercial Arbitration, or, alternatively, the Convention on the Recognition and Enforcement of Foreign Arbitral Awards. (Doc. No. 3.) Respondent moves to dismiss Petitioners' motion and seeks a continuance of the hearing on the motion to confirm to

---

[2] Interest was ordered at the California statutory rate in accordance with the Ontiveros-Garzo Agreement's choice of law provision electing California. (See Final Award, ¶ 185; Doc. No. 2-2, 15.)

conduct discovery. (Doc. Nos. 15, 24.)

## Discussion

### I. Legal Standards

#### a. Federal Arbitration Law

Federal arbitration law is codified in Title 9 of the United States Code. The Federal Arbitration Act ("FAA") comprises the first chapter. See 9 U.S.C. §§ 1–16. The Convention on the Recognition and Enforcement of Foreign Arbitral Awards, or "New York Convention," comprises the second chapter. See id. at §§ 201–208. The Inter-American Convention on International Commercial Arbitration, or "Panama Convention," comprises the third chapter. See id. at §§ 301–307.

Both the New York and Panama conventions govern the domestic enforcement of foreign arbitral awards and non-domestic arbitral awards made in the United States. See Corporacion Mexicana De Mantenimiento Integral, S. De R.L. De C.V. v. Pemex-Exploracion Y Produccion, 832 F.3d 92, 105 (2d Cir. 2016). There is "no substantive difference between the two." Id. The Panama Convention is largely based on the New York Convention, with the former incorporating by reference several crucial provisions of the latter. See 9 U.S.C. § 302 (incorporating by reference §§ 202, 203, 204, 205, and 207). Indeed, Congress has indicated that the two conventions are "intended to achieve the same results," with their key provisions adopting the same standards. See Freaner v. Valle, 966 F. Supp. 2d 1068, 1076 (S.D. Cal. 2013) (quoting H.R.Rep. No. 101–501, at 4 (1990), reprinted in 1990 U.S.C.C.A.N. 675, 678). "Accordingly, authority addressing the application or interpretation of the FAA and the New York Convention [] can be applied to the same issues arising under the [Panama Convention]." Empresa Constructora Contex Limitada v. Iseki, Inc., 106 F. Supp. 2d 1020, 1024 (S.D. Cal. 2000); see also Productos Mercantiles E Industriales, S.A. v. Faberge USA, Inc., 23 F.3d 41, 45 (2d Cir. 1994) ("It is the Committee's expectation . . . that courts in the United States would achieve a general uniformity of results under the two conventions." (quoting H.R. Rep. No. 101–501, at 4 (1990), reprinted in 1990 U.S.C.C.A.N. 675, 678)).

The parties frame their arguments under both the Panama and New York conventions. (See Doc. Nos. 3, 15, 18, 20.) Chapter 3 of the FAA prescribes the method for determining which convention applies when the requirements for both are met. The Panama Convention must apply "[i]f a majority of the parties to the arbitration agreement are citizens of a State or States that have ratified or acceded to the Panama Convention and are member States of the Organization of American States . . . ." 9 U.S.C. § 305. The parties do not contest that their agreement governs an international commercial transaction and that the parties are United States and Mexico nationals. Because both the United States and Mexico have acceded to the Panama Convention and are member States of the Organization of American States, the Panama Convention applies to the parties' arbitration.[3]

**b. Confirmation under the Panama Convention**

Section 207 of the New York Convention is expressly incorporated into the Panama Convention. See 9 U.S.C. § 302. Section 207 provides that any party to an arbitration falling under the Convention may, "[w]ithin three years after [the] arbitral award is made . . . apply to any court having jurisdiction under this chapter for an order confirming the award." See id. at § 207. Federal district courts have original jurisdiction over actions to confirm arbitral awards that are governed by the Panama Convention. See id. at §§ 202-03, 302.

Confirmation of an arbitration award typically "is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." Romero v. Citibank USA, Nat. Ass'n, 551 F. Supp. 2d 1010, 1014 (E.D. Cal. 2008) (quoting Florasynth, Inc. v. Pickholz, 750 F.2d 171, 176 (2d Cir. 1984)). This limited and summary review aims to honor the parties' contractual choices and furthers the FAA's "national

---

[3] Regardless of which convention applies, the Court's analysis remains unchanged. As noted, the New York and Panama conventions are the same in all material respects. See Corporacion Mexicana, 832 F.3d at 105; Empresa, 106 F. Supp. 2d at 1024.

policy favoring arbitration and plac[ing] arbitration agreements on equal footing with all other contracts." Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 443 (2006); see also Thompson v. Tega-Rand Intern., 740 F.2d 762, 763 (9th Cir. 1984) ("Where the parties have agreed to arbitration, the courts will not review the merits of the dispute."). The federal policy favoring arbitration "applies with special force in the field of international commerce." See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 631 (1985). Under Section 207, a district court must "confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C. § 207. [4]

The Panama Convention at Article 5 lists the possible grounds for a district court to refuse recognition and enforcement of an arbitral award. See Panama Convention art. 5. Confirmation may be denied upon a showing that:

> a. The parties to the agreement were subject to some incapacity under the applicable law or that the agreement is not valid under the law to which the parties have submitted it, or, if such law is not specified, under the law of the State in which the decision was made; or
>
> b. The party against which the arbitral decision has been made was not duly notified of the appointment of the arbitrator or of the arbitration procedure to be followed, or was unable, for any other reason, to present his defense; or
>
> c. The decision concerns a dispute not envisaged in the agreement between the parties to submit to arbitration; nevertheless, if the provisions of the decision that refer to issues submitted to arbitration can be separated from

---

[4] Where, as here, the seat of arbitration was the United States, this Court sits as a court of primary jurisdiction and may also consider vacatur, modification, or correction under the FAA, 9 U.S.C. §§ 10-11. See Gov't of Lao People's Democratic Republic v. Baldwin, No. 25-2562, 2026 WL 2752349, at *5 (9th Cir. Sept. 17, 2026); Molecular Dynamics, Ltd. v. Spectrum Dynamics Med. Ltd., 143 F.4th 70, 83-85 (2d Cir. 2025); see also Hawaiian Host, Inc. v. Citadel Pac. Ltd., 637 F. Supp. 3d 1083, 1094-95 (D. Haw. 2022). Respondent did not timely move to vacate or modify the award, see 9 U.S.C. § 12, and instead raises Article 5 defenses in opposition to confirmation. As a result, the Court will only discuss Article 5 defenses to recognition and enforcement.

> those not submitted to arbitration, the former may be recognized and executed; or
>
> d. The constitution of the arbitral tribunal or the arbitration procedure has not been carried out in accordance with the terms of the agreement signed by the parties or, in the absence of such agreement, that the constitution of the arbitral tribunal or the arbitration procedure has not been carried out in accordance with the law of the State where the arbitration took place; or
>
> e. The decision is not yet binding on the parties or has been annulled or suspended by a competent authority of the State in which, or according to the law of which, the decision has been made.

Id. Courts may also refuse recognition and execution of an arbitral decision if its subject cannot be settled by arbitration under the law of the State, or if recognition would be contrary to public policy. See id. at art. 5(2). Article 5 defenses "are construed narrowly, and the party opposing recognition or enforcement bears the burden of establishing that a defense applies." Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran v. Cubic Def. Sys., Inc., 665 F.3d 1091, 1096 (9th Cir. 2011). This "burden is substantial because the public policy in favor of international arbitration is strong." Polimaster Ltd. v. RAE Sys., Inc., 623 F.3d 832, 836 (9th Cir. 2010).

## II. Analysis

Respondent raises five arguments to oppose confirmation: (1) the Final Award exceeds the arbitral mandate (Article 5(1)(c)); (2) the Partial Final Award is time-barred (9 U.S.C. § 207); (3) procedural irregularities impacted the first phase of the arbitration (Article 5(1)(d)); (4) Mexican courts already issued binding resolutions regarding the arbitral awards (Article 5(1)(e)); and (5) Petitioners concealed the death of Respondent Francisco Javier Ontiveros Lopez (Article 5(1)b)). On reply, Respondent defends only two of these arguments: Article 5(1)(c) and timeliness. Compare Doc. No. 15 with Doc. No. 20. The Court considers and addresses each of these contentions in turn.

### a. Article 5(1)(c) Does Not Apply

Article 5(1)(c) of the Panama Convention permits a district court to refuse confirmation if the tribunal's decision "concern[ed] a dispute not envisaged in the

agreement between the parties to submit to arbitration." Panama Convention art. 5(1)(c). Respondent argues this defense applies because the Tribunal calculated its final damages award based on the "wrong interest." (Doc. No. 20, 12.) Specifically, Respondent contends that the damages were based on the hypothetical net proceeds from sale, and that value exceeds the value of a usufruct, what Petitioners purportedly are entitled to under the contract. (Id. at 8-10.) Petitioners say that Respondent's argument contests the merits of the Tribunal's damages analysis, not the scope of the dispute submitted to arbitration as required under Article 5(1)(c). (Doc. No. 21, 5-8.) The Court agrees with Petitioners.

Article 5(1)(c) of the Panama Convention largely mirrors that of the New York Convention and applications of the latter are instructive. See Empresa, 106 F. Supp. 2d at 1024. Courts applying Article V(1)(c) of the New York Convention note that it "tracks in more detailed form § 10(d) of the Federal Arbitration Act . . . which authorizes vacating an award 'where the arbitrators exceeded their powers.'" See e.g., Parsons & Whittemore Overseas Co. v. Societe Generale De L'Industrie Du Papier (RAKTA), 508 F.2d 969, 976 (2d Cir. 1974). "Both provisions basically allow a party to attack an award predicated upon arbitration of a subject matter not within the agreement to submit to arbitration." Id.

Like other convention defenses, this one is construed narrowly. See id.; Ministry of Def. of the Islamic Republic of Iran v. Gould, Inc., 969 F.2d 764, 770 (9th Cir. 1992) (adopting narrow interpretation of Article V(1)(c) defense); OJSC Ukrnafta v. Carpatsky Petroleum Corp., 957 F.3d 487, 501 (5th Cir. 2020) (noting "disagreement over [] contractual limit on damages" was not covered by Article V(1)(c) that is "much narrower, typically covering challenges that the arbitration resolved disputes beyond those the parties submitted"). Notably, it does not authorize the court to rehash the merits of the arbitrator's decision, and the party asserting the defense must "overcome a powerful presumption that the arbitral body acted within its powers." Parsons, 508 F.2d at 976-77 ("Although the Convention recognizes that an award may not be enforced where predicated on a subject matter outside the arbitrator's jurisdiction, it does not sanction second-guessing the arbitrator's construction of the parties' agreement."); Hawaiian Host, 637 F. Supp. 3d at

1110 ("[A] court may not refuse confirmation based on an arbitrator's 'mistakes of law or fact.'" (citation omitted)); Nat'l Oil Corp. v. Libyan Sun Oil Co., 733 F. Supp. 800, 818 (D. Del. 1990) ("[I]t is not [the] Court's role . . . to sit as the panel did and reexamine the evidence under the guise of determining whether the arbitrators exceeded their powers." (quoting Mut. Fire, Marine & Inland Ins. Co. v. Norad Reinsurance Co., 868 F.2d 52, 56 (3d Cir. 1989)). "Under the FAA, arbitrators exceed their powers 'when the award is "completely irrational" or exhibits a "manifest disregard of law."''" Hawaiian Host, 637 F. Supp. 3d at 1110 (quoting Kyocera Corp. v. Prudential-Bache Trade Servs., Inc., 341 F.3d 987, 997 (9th Cir. 2003) (citation omitted)); see also Aspic Engineering and Construction Company v. ECC Centcom Constructors LLC, 913 F.3d 1162, 1166 (9th Cir. 2019) ("An award is completely irrational 'only where the arbitration decision fails to draw its essence from the agreement.'" (citation omitted)).

Respondent's argument is based on the premise that the Tribunal expanded its jurisdiction by valuing an interest it was not authorized to protect, i.e., that the Tribunal exceeded the scope of its mandate by valuing a fee simple when, under the contract, Petitioners were only entitled to a usufruct. Respondent contends that this presents an issue of "arbitral jurisdiction" for the Court to decide independently without deference to the Tribunal's conclusions. (Doc. No. 20, 3.) The Court disagrees. The issues raised by Respondent are not issues of arbitrability or jurisdiction, but rather objections to the Tribunal's specific damages methodology. Despite labeling these objections as "jurisdictional," Respondent invites the Court to second-guess the Tribunal's damages calculation and its interpretation of the parties' contract. This is beyond the scope of what the Court may properly review and is in fact the very kind of analysis that courts caution against.

The proper inquiry under Article 5(1)(c) is not whether the Tribunal calculated damages correctly, but whether it acted beyond the scope of the submission. It did not. The parties' arbitration clause is broad. In it, the parties agreed to submit to arbitration "any dispute[] or claim[]" arising from the joint venture agreement, or in connection with

the rights and obligations of the parties. (Doc. No. 2-2, 15.) The Tribunal was thus properly tasked with arbitrating the issue of breach and awarding the resulting damages.[5] Respondent contests the specifics of the damages award, arguing that it is "the monetary equivalent of a fee simple when the submission reached only a usufruct." (Doc. No. 20, 12.) But this argument attacks the Tribunal's interpretation of the contract and specific valuation of the parties' joint venture, not the scope of the Tribunal's authority. Petitioners explain that the usufruct was just one part of a "broader commercial enterprise" contemplated by the joint venture. (Doc. No. 21, 6.) The Ontiveros-Garzo Agreement contemplated more than just a limited use right; its purpose was to allow the two families to engage in ongoing real estate development and share resulting profits. The Tribunal, having authority to do so, interpreted the parties' agreement as encompassing more than just the value of a standalone usufruct and awarded damages accordingly. Moreover, the Tribunal's damages allocation was based on the profit-sharing mechanism set forth in the contract itself. (Final Award, ¶ 180 ("[T]he Arbitral Tribunal resolves that the Claimants are entitled to the payment of damages in the portion of the Net Fair Market Value of the property when applying the Waterfall provided for in the Ontiveros-Garzo Agreement.").) This outcome is neither irrational nor in manifest disregard of the law.

Respondent also asserts that the Final Award results in an "unconstitutional double recovery" because "Petitioners are . . . awarded the monetized value of the fee while simultaneously retaining the use-right the tribunal was actually empowered to enforce." (Doc. No. 20, 11.) This too fails. The Tribunal ordered that the Partial Final Award, including Petitioners' right to the usufruct, remain only "until the Respondents pay all the damages ordered in [the] Final Award." (Final Award, ¶ 210(a).) An order compelling

---

[5] To the extent that Respondent's arguments do contest arbitrability, the Court also notes that where, as here, the AAA rules are incorporated into the arbitration provision, there is "clear and unmistakable evidence that the parties agreed to arbitrate arbitrability[,]" at least where the parties are sophisticated. <u>See</u> <u>Brennan v. Opus Bank</u>, 796 F.3d 1125, 1130 (9th Cir. 2015).

Respondents to comply with certain obligations until damages are paid does not constitute "double recovery." By its structure, the Final Award ensures that the two remedies will not coexist. In any case, the Court agrees with Petitioners that this objection again "challenges the remedy the Tribunal selected, not the scope of the dispute submitted to arbitration." (Doc. No. 21, 9.) Respondent has not met her burden of establishing an Article 5(1)(c) defense.

**b. Respondent's Other Arguments Fail**

Respondent raises three[6] additional arguments to oppose confirmation: (1) procedural irregularities, (2) Mexican court resolutions, and (3) Petitioners' alleged

---

[6] Respondent's timing argument on the Partial Final Award is immaterial because Petitioners timely sought confirmation of the Final Award that, by its terms, carries the Partial Final Award forward into its comprehensive remedial scheme. (Final Award, ¶ 210.) Here, confirmation of the Final Award in full would oblige Respondents to comply with the terms of the Partial Final Award until the final damages are paid. (Id.) Regardless of whether the Partial Final Award was binding when issued, Petitioners are well within the three-year limit to seek confirmation of the Final Award in full. Respondent argues that the Final Award cannot be read to incorporate the Partial Final Award because it regards the Partial Final Award as "final and binding" and states that it "does not resolve [] points . . . already decided," or "modify or limit" the resolutions of the Partial Final Award "in any way." (Doc. No. 20, 5-6.) But the Tribunal's note that it would not redetermine issues already decided does not mean that it cannot carry obligations already imposed forward, making them part of its final remedial scheme. (See Final Award, ¶¶ 78-80, 210.) Respondent also cautions that Petitioners' theory "reads the limitations period out of the statute in any bifurcated arbitration." (Doc. No. 20, 4 ("Under [Petitioners'] construction, a tribunal could issue a partial award in year one, and the claimant could sit on it indefinitely – five years, ten – so long as some later award in the same case issued within three years of filing.").) This decision does not imply such an impractical result. The outcome here is not to allow late confirmation of the Partial Final Award, but only timely confirmation of the Final Award in full. Here, the Tribunal imposed certain ongoing obligations on Respondents in Phase 1 of the arbitration, then expressly reinstated those obligations in Phase 2 "until Respondents pay all the damages ordered in [the] Final Award." (Final Award, ¶ 210(a).) Under these circumstances, where obligations from the Partial Final Award were repackaged in the Final Award and made conditional pending the final damages payment, timely confirmation of the Final Award is sufficient.

concealment of a Respondent's death.[7] (Doc. No. 15, 9-10.) Petitioners contend that these arguments are abandoned due to Respondent's failure to reassert them on reply. (Doc. No. 21, 10.) The Court does not consider these arguments abandoned but each is without merit for reasons briefly stated below.

i. Procedural irregularities (Article 5(1)(d))

Respondent argues that the arbitral procedure was irregular because the expert witness testimony of Dr. Margarita Haugaard was received in a manner inconsistent with ICDR Rule 28. (Doc. No. 15, 9.) Article 5(1)(d) permits courts to refuse confirmation if "the arbitration procedure [was] not . . . carried out in accordance with the terms of the agreement signed by the parties." Panama Convention art. 5(1)(d). Respondent has not met her burden of establishing that Article 5(1)(d) applies. The Court has not been provided with a copy of the May 28, 2020 hearing transcript and the information provided in the record does not support Respondent's argument. Dr. Haugaard was not a tribunal-appointed expert, so ICDR Rule 28 does not apply to her testimony. (Partial Final Award, ¶ 25 n.16.) Moreover, any argument that Respondent was unable to participate or rebut Dr. Haugaard's testimony is belied by the fact that Respondent had notice of the proceedings but failed to appear or present evidence. (Partial Final Award, ¶¶ 65-68.) As such, the Court rejects Respondent's procedural irregularities argument.

ii. Mexican court resolutions (Article 5(1)(e))

Respondent also invokes Article 5(1)(e) and principles of international comity to argue that confirmation should be refused because two Mexican courts already issued "binding resolutions" regarding the awards. (Doc. No. 15, 10.) Relevant here, Article 5(1)(e) permits a court to refuse confirmation where the award "has been annulled or

---

[7] In her opening brief, Respondent also "reserves all defenses as to the validity, scope, and enforceability of the arbitration clause" to allege that the arbitration agreement did not bind all named Respondents under Article V(1)(a). (Doc. No. 15, 11.) Respondent does not provide any legal analysis or factual support in her motion or reply on this issue. As a result, the Court does not address it here.

suspended by a competent authority of the State in which, or according to the law of which, the decision has been made." Panama Convention art. 5(1)(e). This arbitration took place in San Diego and was governed by California law. (Partial Final Award, ¶¶ 15, 18-33; Final Award, ¶¶61-63.) The arbitration proceedings were governed by the ICDR Rules, the Federal Arbitration Act, and the California Code of Civil Procedure. (Partial Final Award, ¶ 33; Final Award, ¶ 63.) Mexico is not "the country in which, or under the law of which, the decision [was] made." See Panama Convention art. 5(1)(e). The fact that Mexican law applied to certain merits issues does not change that outcome. See Molecular Dynamics, 143 F.4th at 83 n.9 ("Article V(1)(e)'s language 'under the law of which' is widely understood to refer to 'the regimen or scheme of arbitral procedural law under which the arbitration was conducted, and not the substantive law . . . which was applied in the case.'" (citation omitted)).

Respondent's argument under international comity is also unpersuasive. District courts are well within their authority to confirm an arbitral award even where a foreign court declined enforcement. Otherwise, there would be no need for the conventions to specify that Article 5(1)(e) may apply where the award was set aside by a "competent authority of the State in which, or according to the law of which, the decision has been made."[8] See Panama Convention art. 5(1)(e). In sum, Respondent fails to demonstrate that Article 5(1)(e) applies.

iii. Death of Respondent (Article 5(1)(b))

Respondent additionally argues under Article 5(1)(b) that Petitioners concealed the

---

[8] Respondent's sole authority cited in support of its international comity argument, Getma International v. Republic of Guinea, 862 F. 3d 45 (D.C. Cir. 2017), is inapposite. That case involved an arbitration award that was annulled by the Common Court of Justice and Arbitration of the Organization for the Harmonization of Business Law in Africa ("CCJA") where the parties to the arbitration had agreed that any arbitration proceedings would be subject to the Arbitration Rules of the CCJA. In Getma, there was "no dispute" that the CCJA was "a competent authority" for purposes of Article V(1)(e). In contrast, here, Mexican courts are not "a competent authority" for reasons already stated.

death of Respondent Francisco Javier Ontiveros Lopez from the Tribunal and this Court. (Doc. No. 15, 10.) Article 5(1)(b) applies when a "party against which the arbitral decision has been made was not duly notified of the appointment of the arbitrator or of the arbitration procedure to be followed, or was unable, for any other reason, to present his defense." Panama Convention art. 5(1)(b). "This section 'essentially sanctions the application of . . . United States standards of due process.'" Hawaiian Host, 637 F. Supp. 3d at 1103 (quoting Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara, 364 F.3d 274, 298 (5th Cir. 2004)); see also id. ("This provision does not authorize a court to refuse to recognize or enforce an award unless it finds a denial of fundamental fairness in the arbitration proceedings." (quoting Bartlit Beck LLP v. Okada, 25 F.4th 519, 523 (7th Cir. 2022)).

Respondent's argument is contradicted by the record. The Final Award shows that nine days after Francisco Javier's death, Respondents informed the ICDR of his passing and sought suspension of the arbitration. (Final Award, ¶ 45.) The Tribunal requested that Respondents provide a death certificate and succession information, but Respondents failed to do so. (Id. at ¶¶ 46-47.) Petitioners then sought and obtained an executor. (Id. at ¶¶ 47-49.) The Tribunal ultimately found that "the Estate Succession of Francsico Ontiveros Lopez was duly represented in [the] arbitration" despite Respondent's objection. (Id. at ¶¶ 47-56.) In sum, the Court rejects Respondent's Article 5(1)(b) argument.

**c. Respondent Is Not Entitled to Conduct Discovery**

Respondent requests discovery relevant to the above-mentioned defenses and seeks a continuance of the motion to confirm to allow for the completion of said requested discovery. (Doc. No. 15, 11-13; Doc. No. 24.) "The burden of proof is on the party defending against enforcement of the arbitral award." Empresa, 106 F. Supp. 2d. at 1024. But "there is no unqualified right to any discovery a party may request, limited only by relevancy." Id.; see also Imperial Ethiopian Gov't v. Baruch-Foster Corp., 535 F.2d 334, 337 (5th Cir. 1976) ("That position would be too broad in an ordinary civil action. It is even more clearly wrong in the summary proceeding here involved. The loser in arbitration

cannot freeze the confirmation proceedings in their tracks and indefinitely postpone judgment by merely requesting discovery.") "Case law addressing discovery rights in post-award proceedings under Title 9 leaves little doubt [that] the right to obtain discovery in an action to overturn an arbitral decision is strictly limited." Empresa, 106 F. Supp. 2d. at 1024. When a party seeks discovery to substantiate a claim of arbitrator impropriety, "clear evidence of impropriety" is required. See Woods v. Saturn Distribution Corp., 78 F.3d 424, 430 (9th Cir. 1996). "A lesser showing is required for issues unrelated to arbitrator misconduct[,]" but even in those contexts, the moving party "has the burden of showing the alleged defect" to "justify discovery." See Thomas Kinkade Co. v. Hazlewood, No. C 06 7034 MHP, 2007 WL 217384, at *2 (N.D. Cal. Jan. 25, 2007); Empresa, 106 F. Supp. 2d. at 1024.

For reasons already stated, Respondent has not shown "clear evidence of impropriety," nor has she shown any fundamental defect in the arbitration proceeding. Considering the limited circumstances under which discovery is permitted in post-arbitration award proceedings and the various theories Respondent articulated in opposition to confirmation, Respondent's discovery requests are not warranted. See Empresa, 106 F. Supp. 2d. at 1027. As such, the Court denies Respondent's request for discovery.[9]

**d. Respondent's Brief is an Opposition to Confirmation, not a Rule 12(b) Motion to Dismiss**

Respondent's arguments were first raised in a motion to dismiss. (Doc. No. 15.) On reply, Respondent titled her brief "Respondent's Brief in Opposition to Petition to Confirm Award and Reply in Support of Motion to Dismiss." (Doc. No. 20.) Petitions to confirm arbitration awards under the Federal Arbitration Act are treated as motions, not pleadings.

---

[9] At the October 26, 2026 hearing, Respondent's counsel referenced an ongoing Mexican court proceeding, but no documents, orders, or requests for judicial notice have been submitted to the Court in accordance with applicable rules and procedures. See, e.g., Fed. R. Evid. 201, 902(3).

See TermoRio S.A. E.S.P. v. Electranta S.P., 487 F.3d 928, 940 (D.C. Cir. 2007) (explaining that "motions to enforce arbitral awards should proceed under motions practice, not notice pleading"); see also Cubic Def. Sys., 665 F.3d at 1094 n.1 ("Confirmation is a summary proceeding that converts a final arbitration award into a judgment of the court."). As a result, Rule 12(b) motions are the incorrect "procedural vehicles" to challenge such petitions. See, e.g., Prodigy Fin. CM2021-2 DAC v. Gomes Dauricio, No. 2:24-CV-10945-SPG-E, 2026 WL 2507709, at *2 (C.D. Cal. Aug. 25, 2026) (noting court's prior denial of respondent's motion to dismiss as the incorrect "procedural vehicle" for respondent's challenge to confirmation of arbitral award); Xin Yang Int'l Imp. & Exp. (Guangzhou) Co. v. Azad Int'l Inc., 807 F. Supp. 3d 394, 396 (D.N.J. 2025) ("[A] party that wishes to challenge a New York Convention petition to confirm an arbitration award cannot file a Rule 12(b) motion to dismiss. . . . Because a Rule 12(b) motion can be directed only at a 'pleading.'") Moreover, Respondent's motion specifically argues various Article 5 defenses and does not successfully identify any jurisdictional or pleading defect. Accordingly, the Court treats Respondent's motion to dismiss as a brief in opposition to confirmation and considers its arguments in that context.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**Conclusion**

For the reasons above, the Court **GRANTS** Petitioners' motion to confirm the Final Award dated June 12, 2023, **DENIES** Respondent's motion to dismiss, and **DENIES** Respondent's application for leave to conduct discovery. For reasons previously stated, the Court declines to separately confirm the Partial Final Award dated February 23, 2021, without impact to the relief sought by Petitioners. Petitioners are entitled to recover the relief awarded by the Final Award, attached hereto as Exhibit A. Exercising its discretion, the Court declines to award the additional relief requested, including Attorneys' fees associated with this confirmation proceeding and additional post-judgment interest.

**IT IS SO ORDERED.**

DATED: October 27, 2026

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT